**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01545-MSK

**MARK B. HAGELIN,**

      Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

      Defendant.[1]

**OPINION and ORDER**

**THIS MATTER** comes before the Court on Plaintiff Mark B. Hagelin's appeal of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.     Jurisdiction**

Mr. Hagelin filed claims for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI. He initially asserted that his disability began on December 31, 2001. On advice of counsel, he modified this date to March 30, 2007. After his claims were initially denied, Mr. Hagelin filed a written request for a hearing before an

---

[1] At the time Mr. Hagelin filed his appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

Administrative Law Judge ("ALJ").  This request was granted and a hearing was held on May 24, 2011.

After the hearing, the ALJ issued a decision and found that Mr. Hagelin met the insured status requirements of the Social Security Act through March 31, 2007.  The ALJ also found that: (1) Mr. Hagelin had not engaged in substantial gainful activity since March 30, 2007; (2) he had six severe impairments: degenerative lumbar disc disease, mood disorder not otherwise specified, personality disorder not otherwise specified, post-traumatic stress disorder ("PTSD"), schizophrenia and marijuana abuse; (3) none of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (4) Mr. Hagelin had the Residual Functional Capacity ("RFC") to perform light work as defined in 29 C.F.R. §§ 404.1567(b) and 416.967(b)[2] with the following additional limitations: no sitting for more than forty-five minutes at a time without the opportunity to stand; no standing or walking for more than four hours in an eight hour workday; occasional stooping, balancing, crouching, crawling, kneeling and climbing ramps or stairs; no climbing of ladders, ropes or scaffolds; frequent handling or fingering of objects; no work involving unguarded heights or unguarded hazardous mechanical equipment; no requirement that Mr. Hagelin understand, remember or carry out more than simple instructions; no more than superficial interaction with coworkers; and no interaction with the public.  Given these limitations, the ALJ found that Mr. Hagelin was unable to perform his past relevant work.  Finally, the ALJ found that (5) Mr. Hagelin was not disabled because he was able to perform other jobs in the national economy, including mailroom clerk and routing clerk.

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition.  Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404.  The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

The Appeals Council denied Mr. Hagelin's request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Hagelin's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Issues Presented

Mr. Hagelin raises four challenges to the Commissioner's decision: (1) the ALJ's mental RFC finding was not supported by substantial evidence because it did not include a limitation of moderate to marked impairment in social adaptation – a limitation that warranted a finding of disability; (2) the ALJ improperly relied on Mr. Hagelin's failure to follow mental health treatment recommendations as a basis for finding him not disabled; (3) the ALJ's physical RFC finding was not supported by substantial evidence; and (4) the ALJ's Step 5 finding that Mr. Hagelin could perform other work was not supported by substantial evidence. Given the short disability period, March 30-31, 2007, an essential question in this case is whether Mr. Hagelin was disabled during that time period.

## III.    Material Facts

Having reviewed the record in light of the issues raised, the material facts are as follows. Born in 1960, Mr. Hagelin attended college and worked as a telemarketer and in consumer surveying and research. Mr. Hagelin asserts that he suffers from back pain and PTSD, as well as cognitive and behavioral problems.

Due to the amendment of the date of onset of disability and the limited coverage period, the time period for determination of a disability is March 30- 31, 2007. Put another way, in order for Mr. Hagelin to be entitled to benefits, he must establish that he was disabled on one of

these two days and that the disability lasted for a continuous period of not less than 12 months – at least until March 30-31, 2008.

The evidence in the record can be divided into two categories: evidence related to Mr. Hagelin's lower back impairment and evidence related to his mental impairments. Mr. Hagelin was first treated for lower back pain in 2002. At that time, Mr. Hagelin complained of pain radiating from his lower left lumbar area into his buttocks and leg. MRI and x-ray images from March 2002 showed the following: moderately large central and left paracentral disk extrusion at L5-S1 with compression of the thecal sac to the left of midline; loss of definition of the origin of the S1 root, suggesting compression and/or displacement; disk and end plate degenerative changes; irregularity and deformity of anterior superior aspect at L4; and early lower lumbar end plate osteophyte formation. A contemporaneous physical examination revealed reduced lumbar range of motion, positive left straight leg raise, notable weakness along the L3-L4 distribution, and a tender left sciatic notch.

After 2002, there is a gap in the records until March 2009. At that time, Dr. Dwyer performed a physical examination and found that Mr. Hagelin had full range of motion but a slow, antalgic gate and tenderness in his lumbar spine. MRI and x-ray images from April and May 2009 had the following findings: annular bulges at L3-L4, L4-L5 and L5-S1; severe degenerative changes at L5-S1 with loss of disk height on T2 signal; and possible compression of left L5 and/or S1 roots.

Dr. Carson, a consulting physician, performed a physical examination and reviewed x-rays of Mr. Hagelin's lower back in February 2010. The results of the physical exam were as follows: Mr. Hagelin had tenderness over his lower lumbar spine; full range of motion of his cervical spine, hips, knees, ankles, shoulders, elbows, wrists and fingers; lumbar flexion to 90

degrees and extension to 15 degrees; lateral flexion of 20 degrees to the right and 30 degrees to the left; positive straight leg test on the right; and the inability to squat. X-ray images showed marked narrowing of the L5-S1 disk space. Based on the examination and x-rays, Dr. Carson concluded that Mr. Hagelin had the following physical limits: sit, stand, and walk for 15 to 20 minutes at a time; sit no more than 3 to 4 hours in an 8 hour workday; stand and walk no more than 1 to 2 hours in an 8 hour workday; lift and carry no more than 10 pounds occasionally; climb and bend occasionally; and no squatting.

Turning to Mr. Hagelin's mental impairments, the earliest records addressing these issues are from July 2000, when Mr. Hagelin was seen at Denver Health for depression and delusional thinking. The next records are from April 2006, when Mr. Hagelin was evaluated by the Community Health and Counseling Services. He was diagnosed with depression and the treatment provider, Mr. Williams, also wrote in the evaluation that Mr. Hagelin had a depressed mood and affect, suicidal ideation, hopelessness, questionable judgment and anxiety with claustrophobia due to incarceration. Mr. Hagelin was unkempt, with many scratches and abrasions on his skin, but was able to concentrate and remember. In May 2006, Mr. Hagelin was evaluated by Mr. Moynihan, a licensed counselor. He wrote that Mr. Hagelin was a prior mental health services client but had not been seen in several years. Mr. Hagelin was agitated but cooperative, had a depressed, despairing and anxious mood, exhibited suicidal ideation, but had intact judgment and memory with logical thought process. He was diagnosed with PTSD, mood disorder and rule out personality disorder.

The next pertinent mental health records are from May 2008.[3] Mr. Hagelin was seen by Dr. Gutierrez and told him that he had a history of PTSD with increasing symptoms of

---

[3] Although Exhibit 2F contains records from November 2006 and May 2007, these notes contain little relevant information. Similarly, Exhibit 3F contains records from November 2007 which

depression and rage. Dr. Gutierrez observed that he was knowledgeable about his condition but was resistant to Dr. Gutierrez's treatment advice. After a four month gap in treatment, Mr. Hagelin began receiving mental health counseling and other services from the Stout Street Clinic and the Colorado Coalition for the Homeless, among other organizations. Spanning a time period from October 2008 through 2011, the bulk of this evidence consists of case management notes from case workers and counselors. Documented in these case management notes are dozens of instances in which Mr. Hagelin had outbursts of frustration and anger when dealing with people, whether his counselors, medical providers, acquaintances or the general public.

When interacting with case managers and social workers, he was often agitated, angry and verbally abusive. In multiple instances in November of 2008, February, July, October and December of 2009, and February, April, May and June of 2010, Mr. Hagelin was angry, threatening, or verbally abusive towards his case workers. For example, during an April 2010 meeting he was agitated with Ms. Steeves, a counselor. His mood repeatedly alternated between extreme anger and emotional containment. Eventually he was asked to leave after becoming aggressive toward another client. In June 2010, he sent several threatening emails to case workers, including an email that stated "[y]ou picked the wrong Messianic Jew to start a WAR with. A HOLY war." (capitalization in original). He also verbally abused and threatened movers helping him transport household items.

At certain times, Mr. Hagelin seemed to understand his problems, and apologized to his case worker more than once. However, in addition to the behavior noted above, case worker notes from 2009 through 2011 document Mr. Hagelin's hard to follow thought process, obsession with conspiracy theories, corruption and persecution, claims of special powers, poor

---

only address Mr. Hagelin's mental impairments insofar as they list PTSD as part of his medical history.

hygiene, including bed bug infestation, refusal to take medication and continual difficulties with figures of authority, including security guards and the police.  Mr. Hagelin also yelled at medical providers, verbally confronting and berating Denver Health medical personnel in April 2009 and Denver Department of Human Services employees in November 2009.

These counseling notes are supplemented in the record by opinions from Ms. Bodensteiner, a nurse practitioner, Dr. Kutz, a psychologist, Dr. Cookson, an examining physician, and Ms. Steeves, one of Mr. Hagelin's counselors.

In February 2009, Ms. Bodensteiner, a nurse practitioner, completed a MED-9 form.  She opined that Mr. Hagelin would be disabled for twelve months or longer due to PTSD.  She based this assessment on symptoms that included irritability, hostile thinking and violent behavior stemming from abuse.  Mr. Hagelin saw Ms. Bodensteiner three more times from August 2009 to May 2010.  In her notes, Ms. Bodensteiner diagnosed Mr. Hagelin with Post Traumatic Stress Disorder ("PTSD") and depression.  She wrote that he believed his symptoms were caused by low testosterone and that he was, at times, irritable and ranted about inequality, the government and a lack of help.  Finally, she wrote that Mr. Hagelin did not want to take medication.

As part of the disability evaluation process, Dr. Kutz, a psychologist, performed a Mental Status Examination on Mr. Hagelin in February 2010.  Dr. Kutz reviewed Mr. Hagelin's record, took a verbal history and screened Mr. Hagelin for depression, anxiety, mania and psychosis. Dr. Kutz concluded that Mr. Hagelin exhibited no clear or acute depression or anxiety, no pain behavior, no indication of any psychotic qualities and was fully oriented.  He diagnosed Mr. Hagelin with a mood disorder, probable personality disorder and "perhaps limited social contact."  Dr. Kutz also concluded that Mr. Hagelin had moderate impairment in his attention, concentration, persistence and pace relative to a work setting.  He wrote that "[h]is social

adaptation is probably more moderately to markedly impaired." Finally, Dr. Kutz concluded that Mr. Hagelin's "understanding and memory do not show any significant impairment," and that he "is basically psychologically stable, although he is prone to some conflicts with others." The ALJ gave great weight to this opinion and incorporated several of Dr. Kutz' findings into the RFC.

In April 2011, Dr. Cookson examined Mr. Hagelin. Dr. Cookson's psychiatric evaluation included a summary of Mr. Hagelin's self-reported mental health history, the results of a mental status exam, as well as observations based on his medical record. Dr. Cookson diagnosed Mr. Hagelin with schizophrenia, delusions of grandeur and persecution and frequent disorganization of speech and behavior. Dr. Cookson wrote that Mr. Hagelin was somewhat paranoid and irritable and had an "idiosyncratic style of perceiving reality and processing information." Dr. Cookson also wrote that Mr. Hagelin had a lack of personal awareness and behavior but did not feel that he should be admitted to an inpatient psychiatric unit. Finally, Dr. Cookson concluded that Mr. Hagelin would not take medication if it were prescribed and that it might be difficult to find him a community service placement given his problematic behavior. The ALJ did not discuss this opinion in the decision.

Based on her interactions with Mr. Hagelin from April 2010 to April 2011, Ms. Steeves completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in May 2011. Ms. Steeves concluded the following about Mr. Hagelin: he had mild limitations in the ability to understand, remember and carry out simple instructions; moderate limitations in judgment as well as the ability to understand, remember and carry out complex instructions; and marked limitations in the ability to interact appropriately with the public, supervisors and coworkers as well as the ability to respond appropriately to usual work situations and changes in

a routine work setting. Ms. Steeves opined that Mr. Hagelin was periodically "emotionally [and verbally] explosive," had no tolerance for stress, an inability to understand usual work situations and poor hygiene.

In the decision, findings were made about both Mr. Hagelin's statements regarding his subjective symptoms as well as the medical opinions outlined above. Mr. Hagelin's statements were found to be not credible based on his "calm and logical" appearance at the hearing, his insight into his medical condition, his failure to take medication, and his activities of daily living. In support of these findings, the decision cited to Exhibits 5F (a May 2008 treatment record from Dr. Gutierrez), 7F (Dr. Kutz's February 2010 report), 6F (Dr. Carson's February 2010 report) and 14F (a counseling record from April 2010).

The decision gave great weight to Dr. Kutz's opinion, citing Exhibit 9F (the State agency psychological assessment from Dr. Ryan). However, the decision gave little weight to Dr. Carson's opinion, citing Exhibit 3A (a physical RFC assessment from the single decision maker, Ms. Jett, who initially evaluated Mr. Hagelin's disability claim). The decision also gave little weight to Ms. Bodensteiner and Ms. Steeves opinions, citing Exhibits 2F (counseling records from April 2006 to May 2007), 3F (counseling records from September 2007 to February 2009), 5F (Denver Health medical records from March 2007 to April 2009), 8F (counseling records from February 2009 to February 2010), 13F-15F (counseling records from October 2008 to April 2011), and 17F (psychotherapy notes from October 2008 to May 2011). Although the decision cited these exhibits generally, no specific examples of evidence from these records were given, and no specific piece of evidence was compared with Ms. Bodensteiner or Ms. Steeves opinions, save a 2010 quote from one of Mr. Hagelin's counselors that he was "fixated on his perceived

9

sense of injustice." Finally, Dr. Cookson's March 2011 opinion was not mentioned in the decision.

## IV.     Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). The evidence relevant to a social security claim is the evidence after the alleged onset date and before the expiration of a claimant's insured status. *Miller v. Barnhart*, 175 Fed.Appx. 952 (10th Cir. 2006).

## V.      Discussion

In order to establish that he was disabled and therefore entitled to benefits, Mr. Hagelin must establish that he was disabled on March 30-31, 2007 and that this disability subsequently lasted at least one year, until at least March 30-31, 2008. In evaluating the evidence related to a disability claim, the relevant evidence is the evidence after the alleged onset date and before the expiration of a claimant's insured status. *Miller*, 175 Fed.Appx. at 952. According to the decision, all the evidence was carefully considered, but none addressed Mr. Hagelin's condition

on the operative dates, and the Decision did not explain how medical evidence and opinions tied to the circumscribed disability period.

For example, the justifications for dismissing Mr. Hagelin's statements about his subjective symptoms were based on evidence from outside the disability period. The decision cited to Mr. Hagelin's calm and logical appearance at the hearing, his insight into his medical condition, his refusal to take medication, and his daily functioning as examples of evidence that contradicted his statements. However, all this evidence was generated well after the disability period: the hearing in this case was held in May 2011; Dr. Gutierrez wrote in a May 2008 treatment note that Mr. Hagelin had some insight into his condition; Dr. Kutz wrote in his February 2010 report that Mr. Hagelin expressed a reluctance to take medication; and a counselor wrote in an April 2010 note that Mr. Hagelin had extensive knowledge about legal statutes and the Bible. All of these records are from at least a year after the disability period, and the hearing was held more than four years after the asserted disability period. It is not clear how this evidence relates to Mr. Hagelin's disability during March 2007, and the decision does not explain its relevancy.

Similarly, the evidence used to justify the weight given several of the opinions was generated outside the relevant disability period. For example, Dr. Kutz's opinion was given great weight because it "comport[ed] with other substantial evidence," including a State psychological assessment from Dr. Ryan. However, both Dr. Kutz's opinion and Dr. Ryan's assessment were dated February 2010. Both Ms. Bodensteiner and Ms. Steeves' opinions were given little weight, in part, because they were inconsistent with the medical record. In support of this assertion, the decision cited to Exhibits 2F, 3F, 5F, 8F, 13F-15F, and 17F. However, none of these records were generated during the disability period, and the decision does not discuss any

of these records with specificity. In fact, the majority of these records are from well after the disability period. Dr. Carson's opinion was given little weight because it was not "supported by the entirety of available objective medical findings." However, the decision does not cite with specificity what evidence contradicts Dr. Carson's opinion, nor does the opinion explain how Dr. Carson's February 2010 opinion, or any of the other evidence that relates to Mr. Hagelin's physical impairment, relates to the disability period.

When looked at from a longitudinal view, the evidence of both Mr. Hagelin's mental and physical impairments tends to show a steady increase in symptoms and decline in functionality over the years. This might suggest that Mr. Hagelin was disabled during the March 30-31, 2007, disability period. Or, the evidence might be insufficient to establish disability on that date and at least one year after. Whatever the case, the decision does not discuss how the evidence in the record relates to the disability date. In the absence of this analysis, this Court cannot determine whether the decision's ultimate finding that Mr. Hagelin was not disabled as of March 30-31, 2007, is supported by substantial evidence.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED** for further proceeding in accordance with the Court's analysis. The Clerk shall enter a Judgment in accordance herewith.

DATED this 26th day of September, 2013

                        **BY THE COURT:**

                        *[signature: Marcia S. Krieger]*

                        Marcia S. Krieger
                        United States District Judge